Case No. 25-3259, John Ream v. US Dept of the Treasury et al., or Arguments Not to Exceed 15 Minutes Per Side. Mr. Grossman, you may proceed for the appellate. Good afternoon, Your Honors. My name is Andrew Grossman. I represent the appellant, John Ream. I'd like to reserve three minutes for rebuttal. Very well. May it please the Court. Congress does not have the power to reach into Americans' homes and regulate their domestic conduct. The Federal Home Distilling Prohibition is not a regulation of interstate commerce. It is not plainly adapted to achieving any regulation of interstate commerce. And it only frustrates the tax on distilling by banning the taxable activity. The prohibition usurps the police power that the Constitution reserves to the states and to the people, and that violates Mr. Ream's rights, and it plainly injures him. I'd like to begin by addressing the standing issue, and then I would turn to the merits. I think the most straightforward basis for standing is that it is undisputed that the prohibition renders Mr. Ream ineligible to obtain a federal distilling permit. That is plain on the face of the statute, and the government doesn't even disagree with the point. The government, indeed- Can you walk through that ineligibility briefly? Yes, Your Honor. The set of statutory provisions that govern the permitting process make clear that a dwelling house is not a permissible location for obtaining the required federal distilling permit. That permit is the cornerstone of the taxing regime. You can't really become a part of the taxing regime and comply with all of its myriad requirements unless you have the permit, and it's undisputed that Mr. Ream is ineligible for that permit. It's on the face of the statute, and the government doesn't even disagree with the point. All right. So let's talk about the other manner in which you argue your client has standing, right, that his freedom of action is constrained by this law. The government seems to argue that your client lacks a constitutional interest in doing this. What do you think about that? The government appears to have actually abandoned that argument on appeal, and I think for good reason. This Court's decision in online merchants holds to the contrary. I mean, that was a dormant Commerce Clause case, right? Well, I think the relevant point is that it is a separation of powers case and that those affect individual rights. I mean, the Supreme Court squarely held as much in its 2011 United States versus Bond decision that, you know, that any violation of the separation of powers that, you know, injures somebody gives that person standing to challenge the provision in question, and that standing in those cases is not limited to the states. As I said, the government argued that below, and the district court agreed on appeal. The government appears to have abandoned that argument. It's a credible threat, so, I mean, we've read your briefs, but, you know, I mean, they say that there's no reason to think your client would actually be prosecuted. What do you have to say to that? I mean, respectfully, Your Honor, the government is talking out of both sides of its mouth. If you Google home distilling law, the first hit you will get will be the TTB's home distilling webpage, and it states that federal law strictly prohibits individuals from producing distilled spirits at home, and it threatens that doing so, and I quote, can expose you to federal charges for serious offenses and lead to consequences including criminal penalties, imprisonment, seizure, and forfeiture of the tract of land on which the still is located, as well as all the personal property located there. And not only that, I mean, in recent years, the government has sent letters, what it calls enforcement letters, to over 8,000 individuals who purchase stills, threatening the exact same penalties for operating an undistilled still. And indeed, it attached to those letters a press release regarding a joint enforcement operation it took with the state of Florida, quote, to enforce applicable state and federal laws regulating distilling. So, I mean, the government has made perfectly clear that these are enforceable provisions and that the violation of them brings with it serious penalties. So I don't think it's correct to say that there is no credible threat of enforcement. I mean, gosh, other courts have said if there is a statutory prohibition backed by penalties, that's enough to establish a credible threat of enforcement. You know, here we have that and then, you know, 8,000 letters and, you know, the government's current statement and guidance to anybody who might engage in this conduct. I used to try those cases when I was a district judge, and then it's all dried up now. I may have tried the last one. I got them all. Your Honor, so far as I can tell, the federal government appears to engage in these joint enforcement efforts with states and seems content to engage in the enforcement effort, like seizing stills, arresting people, and then allows the states to actually undertake the prosecutions, presumably because the U.S. Attorney's offices believe that is not the best and highest use of their time. ATF doesn't enforce it much. They enforce gun laws mostly. That is correct, Your Honor. If I could, I would like to move on to the merits of the case. Can I just ask a quick question? As far as you know, the last person to be prosecuted for the home distilling violation, when did that take place? That is identified in our brief. I believe it was 10 or 15 years ago. You know, the government would answer that they were actually prosecuted for, among other things, operating an unregistered still and related offenses. Is that the Fourth Circuit case that you're referring to? It might be, Your Honor. I don't recall. I don't think that was a home distilling. There is one that we identified that was a relatively recent home distilling case, and the government's response to that is, well, that was for operating an unregistered still and other offenses of that genre. But the issue is that because of the prohibition on registering the still, it means that if you have the still and operate it in your home, you violate about a dozen other statutory provisions because you can't even enter into the regulatory regime. So to our mind, that is a home distilling case because that's the reason those people could not register their still. As an initial matter on the merits, we think the court should reach the merits. The government, of course, has argued to the contrary, but this court regularly considers proposed alternative grounds of affirmance. We didn't introduce the taxing power and commerce clause issues into this case. The government raised them in its motion to dismiss, which the district court granted. We, of course, rejoined those same issues in our motion for summary judgment, and so the only difference here is that the consequence of the court reaching those potential alternative grounds, the sorts of issues that it would consider in any run-of-the-mill summary judgment case, is that if the court disagrees that those are viable alternative grounds for affirmance, then it necessarily means that our motion for summary judgment prevails. But that just has... I will, Your Honor. So the conduct... Let me begin with the commerce clause. To begin with, the conduct that is regulated by the statute, which is distilling in a dwelling house, is not in and of itself interstate commerce, and the government doesn't contend that it is. At best, it would be something that the federal government could reach under the effects test, as applied in cases like Wickard and in Raich. I mean, you know, to cut to the chase a little bit, those are the cases you have to deal with. I mean, you know, as an original matter, you make strong arguments. And if this were like Raich, where the court had not extended substantial effects to the sort of conduct at issue, or to the sphere at issue, I guess, then that would be one thing. But it has. You know, Wickard, it was grown at home. It was consumed at home by animals, I guess, in that case. And Justice Jackson said, well, you know, when you consider this in the aggregate, it can have a substantial effect, and there go Congress can regulate it. Raich makes it even worse from your standpoint, where it's like, you know, if there's a rational basis so to conclude, then at least, you know, it's like, you know, it falls under necessary and proper. I mean, what are we supposed to do with that? I mean, you know, we must honor the precedents, the holdings, and these are that, of the United States Supreme Court, and not kind of squirrel our way around them. We must honor them. So how do you get past these two cases, is my basic question for you today. Your Honor, I agree that this court must honor those decisions, and I don't think that this is even a close case under those precedents, because both Wickard and Raich involved actual regulations of interstate commerce that would be undercut if Congress were unable to regulate local non-commercial conduct. So in Wickard, you had a scheme to raise the prices in interstate commerce of certain agricultural commodities. And Congress's view is that that would be undercut if people could produce for home consumption outside of the regulatory scheme. And so that's why Congress was able to regulate that. That is how the Supreme Court described it in Lopez in distinguishing Wickard. Likewise, in Raich, you had a complete prohibition on interstate commerce in marijuana, and the court said that it would be, that Congress recognized it would be ineffective without prohibiting home production and consumption. But in this case, I mean, you do have this federal alcohol administration act. And, I mean, if the government can show at least some rational basis, I suppose, to think that allowing folks to produce this stuff at home and consume it there undermines anything in this act, doesn't that sink the ship here? Your Honor, there is no broader regulation of interstate commerce here. The government isn't prohibiting alcohol. It isn't trying to affect the price one way or the other. Those are matters that are generally left to the states as a practical matter. And we raised this argument below, and the government's response wasn't, here's what our regulation of interstate commerce is and how it would be undercut without regulating home distilling. The government's response is, we actually don't even have to say that there is some regulation of interstate commerce that would be undercut. So that's why we think that Raich and Wickard are no barrier whatsoever to this Court's ruling in our favor. The prohibition on home distilling is not necessary to any regulation of interstate commerce and, therefore, it doesn't pass muster under Wickard and under Raich. So far as the taxing power is concerned, this, of course, is not a tax. The government argues that it is necessary and proper to avoidance to collection of the tax, but it really isn't plainly adapted to that. I mean, it literally prohibits the taxable activity, and it does so for the vast majority of Americans who don't have some third place, a commercial location, or something like that where they can undercut this activity. It is also not proper for the reason that if the government, by the contrivance of enacting a tax, can prohibit activities in the home, there is simply no limiting principle to that doctrine. If this case were to be upheld as necessary and proper to the taxing power, the federal government would possess the plenary police power and would be able to regulate or prohibit any activity in the home whatsoever. I mean, I understand your argument, but the government could counter that although this is not commercial activity in the sense that he's selling, or he wants to sell the whiskey, it's commercial in nature because it's identical to activity in which many entities engage in the marketplace, distilling liquors and then going on to sell them. The conduct itself is identical to commercial conduct. Does that give them latitude to say, okay, we're going to therefore regulate it? It's not like... It's a more narrow kind of activity. Not everything one does in the home has an identical counterpart in the marketplace, in the market order. If I may answer, Your Honor. I would give you two answers. First, whether the activity is like commercial activity or not doesn't make a difference with respect to the taxing power argument. I was talking more about... Frankly, I'm more interested in the commerce argument. Yes, Your Honor. As for the commerce clause argument, if you look at cases like Lopez, Morrison, Raich, NFIB, in each one of those cases, the court has defined the relevant class of conduct by looking at literally what does the statute regulate. When it does that, it's then determined, is this part of some broader scheme that is regulatory of interstate commerce? I don't think it matters that the conduct is like commercial conduct. Think about Lopez, for example. The criminal defendant in that case was possessing a gun that had traveled in interstate commerce and was possessing it for the purpose of selling it. He was engaged himself directly in interstate commercial activity. But the problem is that the statute in that instance merely prohibited possession of a firearm within a school zone. In other words, the statute was not limited to interstate commercial activity. So the court recognized that it was not in service of any broader regulation of interstate commerce and for that reason it was beyond the federal government's power. Taxing power of the federal government on all these firearms, right? That is a different statutory, that is a different mode of argument, of course. So far as the taxing power is concerned, I think the most analogous case for us is, I believe it's the Thompson case in this court, where the court recognized, admittedly in dicta, that it would be a step too far for the government to enforce a regulatory provision, in that instance a prohibition on the possession of an unregistered firearm, when the taxing scheme in question under the National Firearms Act actually wouldn't allow it to be registered. And that's effectively the same circumstance you have here. You have a prohibition on registration and the government says, well, yeah, that doesn't really allow collection of the tax or anything like that, but nonetheless that prohibition is somehow in service of the taxing power. Alright, you're going to get your rebuttal. Thank you, Your Honor. We'll see you then, we'll hear from the government. Good afternoon, Your Honors. May it please the court. Caroline Tan for the government. So I wanted to start with standing, given that that's the decision under review in this case. Pre-enforcement standing is the exception and not the norm, and plaintiff bears the burden of establishing his entitlement to sue in federal court. The district court correctly held that plaintiff could not meet that burden. Critically, plaintiff does not have to expose himself to prosecution in order to get the clarity that he seeks about what he wants to do. As we explained in our brief, plaintiff can simply apply for a permit to distill if that application is denied and he can challenge that denial in court. As an initial matter, we absolutely dispute the notion that plaintiff is ineligible for a permitting application, in part because it is not clear from his pleadings that what he wants to do would actually violate the challenge restrictions. What's your understanding of what the plaintiff has done so far in support of trying to do this home distilling process? My understanding so far is that plaintiff has largely researched some recipes and picked out a still that he may want to hypothetically purchase at some point in the future, and that doesn't differentiate him from any other member of the public with access to the Internet and some generalized interest. Well, it does in the sense that he's actually done those things. He also has a history of distilling beer at home. I mean, do you think this is going to be a disputed fact if the case were to go forward? I mean, I think it is possible that down the line if we had more information it might be the case that it turns out what plaintiff wants to do would violate the restrictions that he challenges, but we don't have enough of that here, in part because he hasn't actually stated with particularity where he would like to locate the initial still, whether it would be in a prohibited location. So is it your understanding that he actually could distill liquor with a still at his residence, and that would comport with the law? Generally, yes, Your Honor. I think that there has been a lot of confusion around the colloquial use. So I would point the court to, you know, in the Fifth Circuit case there was also an individual who thought he couldn't do this at home or on his residential premise, and it turned out that he actually could because he had a detached shed that was sufficiently far from the dwelling house, and he had actually received a permit from the agency earlier to distill fuel alcohol at that precise location. And I use that example to say that there has been some confusion around the colloquial use of the term home and what the law actually restricts. The restrictions themselves are tailored. They are only a restriction on where you can place the still on certain parts of the residential premise. They are not a categorical ban on all home distilling, and that's why it's particularly important for an individual who wants to engage in this activity to submit an application. If you do so, you don't have to put yourself in harm's way to get the clarity that you seek. You just submit an application. The agency will look at it and will tell you whether or not you can do what it is you say you want to do. And if I could talk a little bit about that application. It's free. It's online. It is very straightforward. You describe where on your premises you would like to locate your still. You include a diagram of the premises, including some dimensions, the safeguard mechanisms you have to ensure that the equipment that you have purchased is... Does it have to make a fair fee to do this? No, Your Honor. The application is free. It is online. You can check on a 24-7 basis the status of that application. The agency generally tries to respond to applications within 75 days. And it would not put you in harm's way. This is different from the case of someone who has maybe perhaps violated the law or is unsure whether they're going to and fearfully waits for prosecution. Which I think this Court sort of correctly recognized in the Miller case. That there is a distinction when there is an existing. So would you concede that if he applied for the application and it was denied, then he would have standing? Yes. If he can challenge that denial in court, yes. I'm sorry, what does that mean? What was the if there? Oh, I didn't mean to say if. I mean, if he applied and it's denied, he would have standing then to challenge the validity of this statute. I think he would, yes, he would be able to challenge the validity of the denial to the extent that that denial is based on the restrictions that he's... the law that he's challenging, yes. Okay. Well, if we set that to one side, are you... I mean, maybe... is that your answer to the... the threat here? You're saying there isn't for that reason? There are a number of reasons, Your Honor. One of them certainly is we think his credible threat of enforcement is that there is a way to get the answer that he wants without putting himself in harm's way. You know, we had also noted in our brief, this Court has, you know, has this four-factor test and the plaintiff hasn't been able to demonstrate how he meets those particular factors as the district court found. He hasn't been able to show, you know, regular history of enforcement with respect to the provisions that he's challenging. He... you know, opposing counsel... What's the point of this TTB website that basically threatens they're going to take your house and everything in it if you distill spirits in your home? I mean, was that a misquotation by your friend? There is some general guidance on the website about... It sounded pretty fearsome. I do want to note, though, that in the cases where courts have found pre-enforcement standing, there has been targeted interest from the government aimed at the plaintiff in question that makes that threat of enforcement more likely. I think, I mean, you know, that might carry some weight in a case where the statute is vague and it's kind of open to question whether an individual's conduct is prescribed by it. But if we just for the moment take them at their word that this statute specifically prescribes home distilling, the kind of distilling in the place on his residence where he wants to do it, it's... I mean, the statute itself would appear to make the threat. I mean, you know, coercion... You know, coercion is the use of force or the threatened use of force, your money or your life. And just because a guy doesn't pull the trigger doesn't mean that there isn't coercion. There is coercion. So here, if we again, you know, take this premise that it does prescribe what he wants to do. He's being threatened with very severe penalties for action in which he wants to engage and he's a law-abiding person. So what's he supposed to do then, apart from the permit process? What's he supposed to do to be able to challenge it? I think the permit process is an important part of this case. I know. Let's set that to one side, though. I mean, setting that aside, just looking at the case law around credible threat of enforcement, they have turned on whether there is that targeted interest from the government. I think in cases where it's not, you know, the plaintiff himself doesn't have a laser dot on him by the statute, it's pretty specific. Like here, it's pretty specific. And I understand your point. And we're going to look at that carefully. But if he's right that this, you know, specifically says you cannot distill spirits in your home and if you do, the website says we're going to take your house. I mean, really? That's not enough for somebody to say, you know something, that prescription where they're, you know, threatening us, it violates the Constitution. That's not cognizable? It's sort of hard to set aside, I think, some important factors that are, you know, at issue in this case. That might be a much closer case, Your Honor. That's certainly not what we have here. In part because we think that the statute, you know, one of our primary points is it's not a categorical ban on home restriction. And that's why there has been some confusion about what it does and does not cover. The second, of course, being that there is this avenue for you to get the clarity that you seek without putting yourself in harm's way. And I would just point the Court to this Court's decision in Miller. Your position for the government is that not only you can't have a still in your home, but you can't have one in your barn or outbuildings or any place unless you go through the requirements, right? Our position is that there are certain locations on residential premises that might actually be permissible places to engage in this kind of activity. What could you assure us today those would be? So that if he, you know, he could act on that then. Because the government can disavow prosecution, right? So are you able to disavow in a specific concrete way, you know, certain locations on a property like his where he would be free to do this? The example that I can give is from the Fifth Circuit appeal which involved a detached shed located on a... So an outbuilding you could probably, you could do it is your understanding. Is that what you're telling us? I don't want to get ahead of the agency, but what I can say is they have approved permit applications for those sorts of buildings in the past, including involving the plaintiff in the Fifth Circuit appeal. And so that, again, there's a free, easy way to get the clarity that you seek. And that makes this case very different from all of the cases in which this Court has previously found that a plaintiff who is not currently the subject of an enforcement action can nevertheless come to federal court and sue. Let's just hypothetically say that an individual wants to engage in conduct that is expressly prohibited with severe penalties by a federal statute. Okay? Just, you know, just in the abstract. And I'm not, you know, there's no implication that that's this case. I mean, shouldn't an individual... If an individual thinks that that statute violates the Constitution, some part of the Constitution, limitations on Congress's powers or maybe somewhere in the Bill of Rights, you know, why can't, why shouldn't that, the threat from the statute itself, its express terms as to conduct in which the defendant specifically wants to engage, why isn't that enough to open the door to judicial review? And if we don't open that door, aren't we closing off a lot of exactly what Marbury empowers us and requires us to do? I think, you know, this Court has applied the McKay test and has used those four factors, and that is how I would understand... And my point is, I think several circuits have held to this effect. When you have that specificity from the statute, the statute itself is the credible threat. For a law-abiding person, most of us aren't just going to blow off a federal law that has severe penalties. We're going to be chilled, we're going to not do it. I mean, I think in that circumstance, you would look again to the first jury house factor, the extent to which you've established a serious and concrete intent to actually violate the law in question, and those are just the two, that's just the framework that courts have provided. Why don't we talk about the merits, and on this point, I mean, I was quite disappointed that the government chose not to brief the merits in this case. I don't want to be combative, but this is not the first time in my 17 years at civil appellate has kind of presumed to make a decision that is ours to make. And we have discretion, and this is not directed at you personally, we have discretion to reach the constitutional issue if we choose. There might actually be good reasons for us to do that in this case, because this case doesn't look like it has a serious fact-bound element that the district court would provide a necessary contribution for. But in any event, it's our decision to make. And speaking for myself, I think that as a matter of respect for this court and our discretion, when an issue is fully joined by the other side, and indeed, you all raised it in the district court, that you should brief it for us so that we can exercise our jurisdiction with the benefit of your briefing and without it. We wear the ropes in the courtroom, not the civil appellate division. And I would just ask you to maybe perhaps tell your colleagues back there that this was not acceptable, at least speaking for myself. Well, Your Honor, I have a couple responses to that. The first is, the district court only reached the standing question. I'm well aware of that. But we can affirm on any basis. And meanwhile, it's our decision to make. But please, go ahead. Just to say that that was the reason why our response brief focused only on standing. We thought the district court got the standing analysis right. But we might disagree with you. And then we have the question. I mean, we think the standing analysis was correct. We don't think plaintiff has met the burden for pre-enforcement standing. Of course, if this court disagrees with that, you can reverse and remand for the district court to reach. I guess I'm not getting through. If we disagree with you on standing, which we very well might, who knows, if we do, then we must decide whether to go ahead and address this fully briefed, on their side, constitutional issue anyway. And my point is, that is our decision to make, not civil appellate's. And it would be respectful of our court's discretion and our authority to use our judgment about whether to reach that issue in that instance, if the civil appellate would brief it. The alternative is to send it back for an advisory opinion by the district court, wait 18 to 24 months, and then we're back here again. And so we're going to spend two years to get this opinion from the district court, or whether perhaps we ought to just get on with it ourselves, in basically what's a pure question of law. I'm not intimating one way or the other. But I think civil appellate ought to respect our discretion and give us the benefit of their briefing on an issue that we might choose to reach. That's all I'm saying. Just two things, if I may, Your Honor. You want to keep talking about this, or you could just take the message back. But it's up to you. You have the time. Just if I may, we thought it would be helpful to have a full district court decision on the merits. It wouldn't be a big deal. Our decision is my point. I understand that. We could get the benefit of the district court's opinion, or we could do it ourselves. That's our decision. And you thought one thing, but what you think is not dispositive about whether we choose to reach the issue. That's what I'm asking your division to honor and respect. That's all. It's not that much. Brief the issue. You guys brought it up in the district court. Do us the courtesy when they've briefed it and it's our decision. Please do us the courtesy of briefing it for us. And not trying to give us a fait accompli because that's exactly what this felt like. Trying to push around this court is not going to work. So what do you think about the merits? Their point is that this proscription is not in service of some actual regulation of interstate commerce in the way that the proscription, say, in Wickard was. They were trying to maintain elevated prices, or in Raich, they were trying to prescribe sales of marijuana altogether. What's your response to that question or to that argument? There's only so much that I can say on the merits, Your Honor, in part because, as you recognize, we have not briefed the issue. What I will say is we defended the constitutionality of the statute in district court in the Fifth Circuit. We focused in part on taxing because we think that that is, in part because if you look at the challenge restrictions themselves, they cross-reference and are bookended by provisions that talk about adequate security to the revenue. Did our clerk's office convey that we expected the United States to be able to talk about this today? No, I'm happy to answer questions you have. I saw that letter from yesterday. My question is the one I just asked. This is the United States. I'm asking what the United States thinks. Mr. Grossman made a thoughtful counter to my very friendly to the government question about, hey, this is not in service of some actual regulation of interstate commerce in the way that the proscriptions in Wickard and Raich both were. Do you have an opinion, or should we just, if we choose, just go ahead without the benefit of the government's opinion? We're not going to say, oh, we can't do it because the government just steadfastly refuses to tell us what they think. We have defended the constitutionality of the statute throughout in both the district court and in the Fifth Circuit, and our position continues to be that the statute is constitutional. It is necessary and proper to Congress's enumerated powers. I'm not trying to give you a hard time. I'm really not. I'm really just trying to get your help in deciding the case,  I'm not going to keep going on this. If you want to give me an answer to the more specific question, I'd welcome that. If you don't want to, then we'll just carry on. I guess I'd say two things. I argued the Fifth Circuit appeal. I'm happy to talk about the issues that came up in the context of that case, including our consistent position that the challenge restrictions are necessary and proper to Congress's tax and power. I'm asking a more specific question than your bottom line conclusion. Are you able to answer that? I've said it twice. They offer a meaningful substantive distinction of the two cases that walking in here I said, how do you deal with that? He gave me a good answer. Do you care to join that conversation or not? I don't want to get ahead of the agency or the Solicitor General on the specifics of anything absent briefing. If this court really wants to get into the issue at this stage, even though you would be able to review the issue de novo with the benefit of a district court decision down the line, and considering the fact that this is a law that's been on the books for over 150 years and no one has asked for an expedited review of this particular issue, we would like the chance to offer. Well, you had a chance, but okay. We're just going to leave it there then. Thank you. So what about Mr. Grossman and this permit business? Your Honor, I was surprised to hear that argument because the governance brief doesn't actually even argue that it's unclear where Mr. Ream intends to place his still, and I think the reason for that is Mr. Ream's testimony in his declaration. This is at page ID 186, paragraph 11. It says he intends to still, quote, in my own home, like I did during my nine years of homebrewing. So there isn't actually any ambiguity that he intends to do it within his dwelling house, which is, you know, precisely where the statute says you can't, and where the government in its briefing in this case recognizes is subject to the prohibition. Would he be satisfied if they gave him a permit to put it in his barn? Well, he intends to do it in his house. That is the conduct he intends to undertake. In point of fact, I don't believe that Mr. Ream has a barn. That's not in the record, but he, like most people, has a home. He doesn't have some vast property where he could have a backwood shanty or something like that where the government maybe would give him a permit for it. The old law used to be that you had to have a big sign that says distillery and have it outside wherever you've got the distillery. Is it still in effect, or do you know? I'm not familiar with a provision that requires that, Your Honor, but there very well may be. But I think the point stands that Mr. Ream is simply ineligible to do what it is that he intends to do, which is distilling in his own home. Second, so far as the merits are concerned, Your Honor is correct that there are no disputed facts. We filed a motion for summary judgment. The government's response was not, here are some fact disputes. The government recognizes, or at least recognized in its briefing below, that the merits questions presented are pure questions of law. And we also think that the alternative here is Mr. Ream waiting another two years in a round trip to the district court plus perhaps another year for this court to consider the issue, so three more years for an issue to see, and during that time he will be required to comply with a statute that the only other court to consider it held it to be unconstitutional. Mr. Ream's rights are at stake here. We've litigated this case reasonably expeditiously, and the government shouldn't be able to force the violation of Mr. Ream's rights for another three years because it doesn't feel like briefing an issue before this court and is attempting to tie the court's hands. Finally, there is no limiting principle on the merits under the government's commerce clause or taxing power theory. Under either of those theories, the government could, either with or without the contrivance of a tax, prohibit working from home, home cooking, home childcare. There is no limiting principle. This is the exact same evil that the Supreme Court confronted in Lopez, in Morrison, and at least with respect to the commerce clause in NFIB. And this court, if I may... Is that argument, no limiting principle that you're making right now, is that specific to the tax power argument on their side or are you making... Is that as to the necessary and proper argument as well? Your Honor, we've made it with respect to both because the government relies on the necessary and proper clause with respect to both. Obviously, that third category of commerce, under Lopez's series of categories, that's based on the necessary and proper clause, as the court explained in Raich. And so it is appropriate to consider whether the exercise is proper. And Raich and Wickard, in the way that I described, as well as Lopez, describe how it is to do that. I will also note, if I may, that this court in United States v. Rose did adopt that view of Raich that I discussed. So this isn't something that we're just coming up with. This is the way this court has seen it. What is, quote, that view of Raich again? That if the government is going to regulate local conduct, then it must be in service of a regulation of interstate commerce. And if the court has no further questions, we would ask that the court reverse. Thank you. Thank you both for your arguments. The case will be submitted.